Hutchinson v. Abbott.

DAVID S. HUTCHINSON

*v.*

MARGARET ABBOTT et al.

1. Usury may be set up by the owners of the premises and by subsequent encumbrancers, under the petition of the holder of a mortgage for the surplus money remaining in this court after satisfying prior mortgages.

2. A promise by one of the mortgagors to the assignee, made after the assignment, to pay the interest on such mortgage promptly, does not estop him from setting up usury in the principal or in the interest previously paid; nor does a claim by one of the mortgagors, to have the full amount of such mortgage deducted by the assessor from the taxes on the premises, amount to an estoppel.

Bill to foreclose. On application by petition for surplus money. Exceptions to master's report.

*Mr. A. G. Richey*, for petitioner.

*Mr. J. S. Aitkin*, for respondents.

THE CHANCELLOR.

This is an application for the payment of the third mortgage out of the surplus money remaining after paying out of the proceeds of the sale of the mortgaged premises under the execution the amount due on the frst mortgage, with costs and execution fees. There is a like application pending in behalf of

Hutchinson v. Abbott.

the holder of the second mortgage. The petitioner is Matthias H. Miller. His mortgage is for $1,000 and interest, and was given February 23d, 1872, to Edward H. Murphy, and by him assigned to Miller, July 2d, 1873. The contestants are the holders of the fourth and fifth mortgages, and the widow, executors and devisees of Edward Abbott, deceased. All the mortgages on the property, except the first, were given by the executors. The contestants insist that Miller's mortgage was invalid and usurious in its inception, and, if valid, is subject to certain credits for excess of interest paid and for premium taken by Murphy to extend the time of payment of the principal. The fourth and fifth mortgages were both given after the petitioner's mortgage was assigned to him. The master to whom the petition was referred reported that the sum of $800 only of principal was due to the petitioner, but that, under the facts of the case, interest should be allowed upon it, deducting the excess of interest paid on the mortgage over what was due thereon under those facts; and that the petitioner was, therefore, entitled to receive out of the surplus money, after payment of the money due on the second mortgage, $800, with interest thereon from April 1st, 1876, less such excess of interest.

The master finds that the petitioner's mortgage was and is usurious; that when it was made it was agreed between the mortgagors and mortgagee (Murphy) that the latter should advance only $900 of the $1,000 mentioned in and secured to be paid by the mortgage, and should retain $100 for premium for the loan; and he also finds that interest was paid on the $1,000 from the date of the mortgage to April 1st, 1870; and that on the 1st of April, 1873, $100 were paid to Murphy, by agreement between him and the mortgagors, for an extension of the time for paying the principal for one year. He therefore, allowing interest on $800 from April 1st, 1876, up to which time the interest was paid, to the time of payment out of the surplus fund, deducts $119.40 as the interest on $1,000 from the date of the mortgage to April 1st, 1873, ($77.40), and interest on $200 ($42) from the latter date to April 1st, 1876, together, $119.40. The matter comes before me on exceptions to the master's report by petitioner and respondents.

It will be proper to notice, in the first place, the exception taken by the respondents to the validity of the petitioner's mortgage, the allegation being that the executors, by whom it was given, gave it without authority. The will provides as follows:

"Should any one or more of my children, with the approbation of my executors, deem it expedient to leave their common household before the period designated for the inheritance in fee simple as aforesaid, and live separate from the cost to my estate, and shall desire pecuniary assistance from it to aid them in a proper business or situation, I hereby authorize my executors, if the same meet their approbation, to borrow or obtain on my estate any sum therefor, not exceeding $1,000, to pay the same to such child on his or their receipt therefor, which payment, without interest, shall be accounted for against him or her in the inheritance and distribution as aforesaid."

The answer put in by the widow and executors and devisees of Edward Abbott in this cause merely denies that the petitioner's mortgage is a valid instrument, and alleges that if valid, there is not the whole amount of $1,000 due thereon, and it also, in general terms, denies the validity of the fourth and fifth mortgages. There is no proof whatever, however, on the subject, except the will, and by that the executors had power, under certain circumstances, as appears above, to mortgage the property. The exception under consideration will, therefore, be overruled.

To consider the exceptions filed by the petitioner: It is urged in his behalf that the contestants cannot set up usury against him because it has not been pleaded in the cause; that is, because the holders of the fourth and fifth mortgages filed no cross-bill alleging the usury, in which way alone it is insisted they could have availed themselves of the defence of usury to their codefendants' mortgage. It appears that neither they nor the petitioner answered the bill. The executors and devisees did, but did not set up usury. Under the circumstances, however, the defence may be made on the application for surplus money. In *Brinkerhoff* v. *Franklin, 6 C. E. Gr. 334,* cited by petitioner's counsel, where one defendant, a mortgagee, had answered, impeaching the mortgage of another defendant who had not answered, it was said that the rights of the defendants could be

Hutchinson v. Abbott.

settled on application of either for the surplus money or by cross-bill, as they might deem best. I see no objection to permitting usury to be set up in this case on this application. The proceeding is a direct one, an application to the court for payment of the petitioner's mortgage out of the surplus. The other defendants are called into court to respond to the claim, and they may do so by setting up usury. But it is insisted that there was no usury, and if there was the mortgagors would be, and those who claim under them are, estopped from setting it up. The proof, however, is that when the petitioner's mortgage was made, Murphy, the mortgagee, took a premium for the loan of $100. Murphy testifies that the application for the loan was made to him by Samuel L. Abbott, one of the mortgagors, (who seems to have negotiated it), and that on the application he told Abbott he would charge him $100 for making the loan. Abbott swears that the $100 were not for expenses, but for a "bonus," and Murphy does not deny it. The mortgagors received only $900. The usury is clearly proved. It is also proved that on the 21st of March, 1873, a note for $100 at one year was given by two of the mortgagors to Murphy, pursuant to agreement between them and him in consideration of his agreement to extend the time for payment of the mortgage for one year, and the note appears to have been paid. The master properly credited the amount of this note on the principal of the mortgage. *Nightingale* v. *Meginnis, 5 Vr. 461 ; Trusdell* v. *Jones, 8 C. E. Gr. 121 ; S. C., on appeal, Id. 554 ; Terhune* v. *Taylor, 12 C. E. Gr. 80.*

But the petitioner insists that the mortgagors and the holders of the fourth and fifth mortgages are estopped from setting up usury or claiming a credit for that payment, because when the petitioner in October next succeeding the date of the assignment to him, which was in April, called on Samuel L. Abbott for payment of the interest then due on his mortgage and consequently informed him that he had become the owner of the mortgage by assignment, Abbott promised to pay the interest on the mortgage as it should become due. As the petitioner states it, what was said on the subject was as follows: The petitioner told Abbott that he had got the mortgage from Murphy.

Hutchinson *v.* Abbott.

Abbott said that Murphy had not told him he was going to part with it, and said he supposed the petitioner would keep it, or something to that effect. The petitioner replied that he supposed he might do so provided the interest was promptly paid, and Abbott said that should be done. Abbott admits that he said something to the effect also that the mortgage was a safe one. This promise to pay the interest promptly while the petitioner should continue to hold the mortgage, operates as an estoppel, so far as the interest thereafter paid was concerned; for it is to be presumed that on the faith of it the petitioner continued to hold his mortgage as otherwise he might not have done. But the estoppel does not extend to the principal, for the petitioner, when he took the assignment of his mortgage, did not do so on any representation whatever in any way of the mortgagors or any of them. When he went to see Samuel L. Abbott it was not until six months after he had got the mortgage. It is enough to say that it is obvious that Abbott was under no obligation to make any statement or give any warning as to the mortgage, the amount actually secured by it, its liability to the defence of usury or any other defence, or to speak as to its sufficiency or collectibility or otherwise. Having undertaken to pay the interest he is estopped by the promise for the reason before given, but neither he nor those claiming under him are estopped from making defence as to the principal or from claiming the application thereto of the $100 paid for extension.

Nor does any estoppel arise from the fact that one of the mortgagors, in the assessment of taxes upon the mortgaged premises, claimed a deduction of $1,000 as the principal of the mortgage. That was not a representation made to the petitioner, and besides it appears to have been made as late as 1876. The principle on which the amount due on the petitioner's mortgage should, under the circumstances, be computed, is to allow $800 only of principal and all interest paid up to April 1st, 1876, from which date the interest is in arrear, and interest on $800 thereafter at seven per cent. per annum, the rate which the bond bears, until the money be paid, deducting the interest ($14.50) on the $100 retained on the making of the loan, from the date of the mortgage, February

23d, 1872, to March 24th, 1874, when the $100 note given for premium for extension fell due and was paid, and the interest ($28.30) on $200 from that time to the 1st of April, 1876. The petitioner is, under the circumstances, entitled to his costs of suit, including costs of his exceptions. The priority or validity of the second mortgage appears not to be disputed.